OPINION
Dale Miller appeals from a judgment of the Greene County Court of Common Pleas, Domestic Relations Division, which found him in contempt of court.
Miller and Lori Miller nka Loder were divorced in 1998. Miller was named the residential parent of their minor child and was awarded the marital residence, and Loder was ordered to pay child support. The divorce decree required the parties to sell their 1969 Camaro and "all of its unassembled parts" and provided that Loder would receive the first $3,800 in proceeds from the sale: $2,000 to equalize the property division and $1,800 to reimburse her for an insurance check cashed by Miller for damage to a car that Loder received as part of the property division. The parties were to divide equally any proceeds from the sale in excess of $3,800. The decree further provided that the $1,800 attributable to the insurance check would be "reduced by [Loder's] temporary child support arrearage and any child support arrearage under the Court's February 18, 1998 Decision." The decree also required the parties to prepare a master list of household goods and furniture to be divided by making alternating choices, starting with Miller.
In May 2000, Loder filed a motion to find Miller in contempt of court for failing to sell the Camaro and for failing to distribute the household goods in accordance with the decree. Miller responded to the motion by asserting that he had transferred the Camaro in exchange for a mortgage abatement or rent of $1,037, but that Loder had not been entitled to any of the proceeds because she had been in arrears on child support. Miller also claimed that, as far as he knew, Loder had obtained all of the property that she wanted from the house.
At the hearing on the motion, Loder testified that, in 1998, both parties had agreed that the value of the Camaro was $5,000. She also stated that she had known someone interested in buying the car, but that when she had contacted Miller about setting up an appointment, he had responded that he was not selling the car. With respect to the household goods, Loder testified that she, Miller, and each of their attorneys had agreed to a conference call to make the alternate selections from a list, and that Miller had not answered his phone at the appointed time. Loder also testified that she had paid all child support owed.
Miller testified that he had exchanged the Camaro for "one month's rent" or $1,037. Miller also stated that he understood that Loder was to receive the first $3,800 from the sale of the Camaro, but that the amount would be reduced by missed child support payments. Miller testified that Loder had owed him $904 in "past temporary support." He claimed that he had purchased the car for $100 and denied that he had rebuilt the transmission. He admitted, however, that "the car and all its assembled parts was worth $5,000." He stated that he had never advertised the car for sale, but that he had "asked around" for interested buyers. With respect to the household goods, Miller testified that no list of property had ever been submitted to him and that, as far as he knew, his attorneys had not been contacted about the division of property. Miller maintained that Loder had had ample opportunity to get anything that she wanted out of the house, but he admitted that there were some items on Loder's list of premarital personal property that were still in the house.
A representative of the Child Support Enforcement Agency ("CSEA") testified that Loder had paid all child support owed since the time of the divorce decree, but that an arrearage existed from the temporary child support order in effect prior to the divorce decree in the amount of $798.48.
After the hearing, the trial court found Miller in contempt of court, concluding that he had willfully failed to pay Loder $3,800 as required by the divorce decree and that he had failed to participate in the division of household goods. The trial court ordered Miller to pay Loder $3,800 within thirty days of the judgment entry, to immediately release certain personal items to her, and to immediately contact her to participate in alternating selections from a list of other household items. Additionally, the court ordered Miller to pay $500 in attorneys fees and $100 in costs.
On appeal, Miller advances four assignments of error:
 1. THE TRIAL COURT ERRED BY FAILING TO CONSIDER EVIDENCE OF APPELLEE'S TEMPORARY SUPPORT ARREARAGE.
 2. THE TRIAL COURT ERRED BY FINDING PLAINTIFF IN CONTEMPT FOR THE SALE OF THE 1969 CAMARO.
 3. THE TRIAL COURT ERRED BY HOLDING APPELLANT IN CONTEMPT FOR FAILURE TO DIVIDE HOUSEHOLD GOODS AND FURNISHINGS.
 4. THE COURT ERRED BY PENALIZING APPELLANT IN VIOLATION OF O.R.C. § 2705.05(A)(1).
We will first address the disparate evidence regarding the value of the Camaro. Loder testified that the parties had agreed in 1998 that the value of the Camaro was $5,000, and Miller conceded that it would have been worth that amount if the car had been "assembled." On the other hand, Miller claims that he paid only $100 for the car and implies that his rent for one month, or $1,037, was a reasonable exchange for the car.
The trial court is charged with evaluating the credibility of witnesses and weighing conflicting evidence. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Based on the evidence presented, the court could have reasonably concluded that Loder's testimony regarding the value of the car was credible and that the Camaro had been worth $5,000. Moreover, based on the way the distribution of proceeds was structured in the divorce decree, the trial court apparently determined that the car was worth something in excess of $3,800 at that time because it ordered Miller to pay Loder $3,800 out of the proceeds, with any additional proceeds to be divided equally. Furthermore, each of the parties signed the divorce decree, which was prepared by Miller's counsel, further evidencing the parties' belief that the car was worth in excess of $3,800.
The trial court's judgment does not address directly Miller's claim that Loder had been in arrears on her child support and that she therefore had not been entitled to any proceeds from the Camaro. The language of the divorce decree, however, refutes Miller's claim that he owed nothing to Loder because of the alleged arrearage. Even assuming, for the sake of argument, that Loder had owed back child support, the decree clearly provided that such support could be offset only against that portion of the Camaro proceeds related to an insurance check cashed by Miller, or $1,800. The other $2,000 that Loder was to receive from the sale of the Camaro was part of the property division in the divorce decree and was not contingent upon the payment of child support. Thus, even if the trial court had accepted Miller's claim that $1,037 was a reasonable value of the car, it could have properly found him in contempt for failing to give those proceeds to Loder. The trial court could also have reasonably concluded, however, that Miller had neither made a good faith effort to sell the Camaro nor presented credible evidence that the actual value of the car had been $1,037 when it was exchanged for rent.
The trial court also found that Miller was in contempt for failing to participate in the division of disputed household goods. Miller claims that he reasonably assumed that Loder had obtained all of the items she sought. Miller does not dispute, however, that the alternating selection process ordered in the divorce decree never took place. Loder testified that she and both parties' attorneys had arranged a conference call for that purpose, but that Miller had not answered his phone at the designated time. Miller testified that he never received such a phone call and implied that he did not know anything about it. Miller did admit, however, that he had never asked Loder whether she had obtained all of the items she wanted from the house and that some of the items Loder claimed were her premarital property or were of sentimental value to her were still at the house. Again, the trial court could have reasonably credited Loder's testimony on this issue and concluded that Miller had refused to participate in the distribution of household goods contemplated by the divorce decree.
The second assignment and third assignments are overruled.
Although it did not err when it found Miller in contempt of court regarding the distribution of proceeds from the Camaro, the trial court should have made a finding regarding Loder's child support arrearage in determining the amount owed to her. The divorce decree required any arrearage to be set off against a portion of the proceeds from the car and, without a finding on this issue, the record does not allow us to conclude that $3,800 was the proper amount owed by Miller. The CSEA representative testified that Loder owed $798.48 in arrears from the temporary support order. If this evidence was credible, Loder was not entitled to $3,800 in proceeds from the Camaro even if the car was worth $5,000, the maximum value about which evidence was presented.[1] Thus, we will remand this matter to the trial court for it to articulate its basis for awarding $3,800 or for it to establish another figure in keeping with its determination as to the arrearage.
The first assignment is sustained.
[1] If the car had been sold for $5,000, Loder would have been entitled to the first $3,800, and the parties would have divided the balance of $1,200. Thus, Loder would have received $4,400 and Miller would have received $600. A child support arrearage in the amount of $798.48 would have reduced the amount to which Loder was entitled to $3,601.52.
Finally, we turn to Miller's argument that the trial court violated R.C. 2705.05(A)(1) by "fining" him $3,800, in excess of the court's statutory authority. Assuming arguendo that this statute applies to these proceedings, this argument nevertheless lacks merit because the trial court ordered Miller to pay $3,800 in accordance with the terms of the divorce decree; it did not fine him this amount.
The fourth assignment is overruled.
The trial court's judgment will be affirmed insofar as it found Miller in contempt of court. This matter will be remanded to the trial court, however, for further proceedings consistent with our discussion of the first assignment of error.
FAIN, J. and YOUNG, J., concur.